```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA
```

MARIO WILLIAMS,                )
                               )
                    Plaintiff, )
                               )
            v.                 )        No. CIV-06-201-FHS
                               )
MARTY SIRMONS, et. al.,        )
                               )
                   Defendants.)

## ORDER

Before the court for its consideration is the Defendants Marty Sirmons, Layne Davison, Ron Ward, Eric Franklin, and Tracy McCollum's[1] Motion for Summary Judgment and Brief in Support. The court rules as follows on the motion.

Plaintiff filed his civil rights complaint in this court on May 24, 2006. On this same date, plaintiff filed a Motion for Leave to Proceed In Forma Pauperis and a Motion for Appointment of Counsel. On June 6, 2006, an order was entered granting the Motion to Proceed In Forma Pauperis. On August 4, 2006, the Motion for Appointment of Counsel was denied. On July 31, 2006, defendants filed a Motion to Stay Proceedings and a Request for an Order for Special Report. On August 10, 2006, an Amended Motion to Stay Proceedings and Request for Special Report was filed. On August 16, 2006, an order was entered granting the Motion to Stay. On November 14, 2006, a Special Report was filed. On this same date a Motion to Dismiss was filed. On January 29, 2007, a response to the motion to dismiss was filed

---

[1] Plaintiff's Complaint erroneously refers to Defendant McCollum as "McCullin". Thus, the court will use the correct spelling of the name McCollum.

1

by plaintiff. On September 17, 2007, this court entered an order granting in part and denying in part the motion to dismiss. The court found that plaintiff had failed to exhaust his administrative remedies on all but two claims and dismissed all unexhausted claims. Only two claims remain: Plaintiff's claim regarding his October 2005 placement in segregated housing at the Oklahoma State Reformatory and plaintiff's claim regarding his February 2006 placement in segregated housing at the Oklahoma State Reformatory. On September 26, 2007, defendants filed a Motion to File a Supplemental Special Report, Answer and Motion to Dismiss. On this same date, this court granted this request.

On October 1, 2007, plaintiff filed another Motion to Appoint Counsel which was denied on November 27, 2007. On November 8, 2007, the defendants filed another Special Report. On this same date defendants Marty Sirmons, Layne Davison, Ron Ward, Eric Franklin, and Tracy McCollum filed a Motion for Summary Judgment. On January 14, 2008, plaintiff filed a response to said motion.

Plaintiff appears *pro se* in this action and is an inmate in the custody of the Oklahoma Department of Corrections and is currently incarcerated at the Oklahoma State Penitentiary in McAlester, Oklahoma.

He filed this action pursuant to 42 U.S.C. Sec. 1983 alleging defendants at the Oklahoma State Penitentiary (OSP) and the Oklahoma State Reformatory (OSR) where he was formerly incarcerated, violated his constitutional rights. Plaintiff alleged that defendants violated his Sixth, Eighth, and Fourteenth Amendment rights by placing him in segregation and asserted other claims as well.

2

**STANDARDS OF SUMMARY JUDGMENT**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 ( C). See also <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact. <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986). If this initial burden is satisfied, the nonmoving party then has the burden of coming forward with specific facts showing there is a genuine issue for trial as to elements essential to the nonmoving party's case. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party cannot rest on the mere allegations of the pleadings, but must go beyond the pleadings and "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it} carries the burden of proof." <u>Applied Genetics v. First Affiliated Securities</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).

"A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Thomas v. IBM</u>, 48 F.3d 478, 486 (10th Cir. 1995) (quoting <u>Anderson</u>, 477 U.S. at 248). In this regard, the court examines

the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. <u>Deepwater Invs. Ltd. v. Jackson Hole Ski Corp</u>, 938 F.2d 1105, 1110 (10th Cir. 1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. With these standards in mind, the court turns to the merits of the defendants' motion.

**FINDINGS OF FACT**

The court finds the facts as follows. Plaintiff is currently incarcerated at OSP. He was housed at the OSR in Granite, Oklahoma from October 28, 2004, until March 16, 2006. On October 14, 2005, plaintiff was placed in segregated housing on "pending investigation" status because of evidence that he was menacing staff. On November 1, 2005, after further investigation he was charged with the Menancing offense of 05-4, "Making Sexual Threats, Stalking, or Making Threats of Bodily Harm." According to Correctional Officer Trina Dietrich, plaintiff gave her a note containing "suggestive sexual implications". In an Incident/Staff Report Ms. Dietrich completed, she stated that plaintiff had started to request her attention in August 2005 and had continued to show her constant attention. Plaintiff suggested that Ms. Dietrich should accompany him to the restroom and tried on several occasions to arrange to talk to her privately. In the note plaintiff gave Officer Dietrich, he conveyed a plan for the two of them to have time alone together in a restroom. He stated to Officer Dietrich "....and you know that I want you!" He informed her, "Now all I want is for us to continue to build on our relationship...I'll kiss you later!" Pursuant to Department of Correction's policy OP-040204 entitled "Segregation Measures" "segregation is used to remove an inmate

4

from general population when circumstances indicate the continued presence of the inmate in general population poses a threat to life, property, staff, self, other inmates, or to the security or orderly operation of the correctional facility." In this case, plaintiff's behavior reflected a threat both to staff and to the security or orderly operation of the facility.

Department of Corrections' Segregation policy provides that administrative segregation is one form of segregation. This segregation status does not include segregation given as a punitive measure. Pending investigation status and transit detention status are two types of non-punitive administrative segregation. Furthermore, inmates who wish to be protected from possible harm from other inmates may request protective custody, another type of non-punitive administrative segregation. Thus, the fact that a prisoner is housed in administrative segregation does not indicate that he is being punished or that his conditions of confinement are punitive in nature.

The general living conditions in OSR's segregated housing are safe and humane and they approximate the living conditions of the general population. All inmates residing in segregated housing are placed in cells which permit them to converse with and be observed by staff. In addition, they are provided the opportunity and space for exercise outside the cell for a minimum of one hour per day five days per week, a daily visit from health care staff (unless more frequent medical attention is needed) daily visits from a senior correctional officer, visits from program staff upon request, and clothing which is not degrading and is issued and laundered on the same basis as the clothing of the general population. Bedding and linen are also issued and laundered as frequently as that of the general population and a

prisoner in segregated housing is also entitled to personal hygiene items.

Inmates in segregated housing are also provided the opportunity to shave and shower a minimum of three times per week. They are also entitled to barbering and hair care services, which are available on the same basis as that of general population inmates. They are entitled to reading and writing materials, eyeglasses (if needed), the same mail privileges that general population inmates receive, and the same opportunity for visitation as general population inmates (unless substantial reasons exist for withholding this privilege). In addition, inmates in segregated housing receive access to legal materials, grievance forms, and law library services, as well as the same meals provided to the general population.

Plaintiff was on pending investigation status prior to his hearing. Plaintiff's charge was investigated, and he was afforded a disciplinary hearing on November 21, 2005. After reviewing and considering all the evidence, the disciplinary hearing officer concluded that plaintiff was guilty of the misconduct of Menacing. The evidence relied upon included Officer Detrich's statement and the letter plaintiff gave Officer Dietrich, which contained sexually suggestive statements and plans for plaintiff to spend private time with Officer Dietrich. Plaintiff received a copy of the statement of the evidence relied upon and the statement of the reasons for the punishment selected. Plaintiff appealed the finding that he was guilty through the disciplinary appeals process. The finding of guilt was affirmed.

One of the sanctions given to plaintiff was a thirty-day

stay in disciplinary segregation. Following plaintiff's hearing, the written notation on his segregation order was erroneously changed to transit detention. In actuality, plaintiff was housed in segregated housing in accordance with OSR's policy OSR-040204-2, entitled "Segregation Level 2 A Unit Guidelines" rather than transient detention. This procedure states "level 2 is a form of administrative seperation from general population which provides inmates a secure environment conducive to a positive change and successful return to general population."

    Because of the clerical error stating that plaintiff was on transit detention, he never officially served his disciplinary segregation. However, his time spent in segregated housing was not lengthened because of the clerical error. In fact, had the error not occurred, plaintiff would have spent an additional thirty days in segregation to serve his disciplinary segregation. Plaintiff was moved from segregated housing into C-unit of OSR's general population on January 3, 2006.

    On February 1, 2006, plaintiff again was placed in segregated housing pending investigation for inappropriate relations with staff. According to Warden Franklin, plaintiff's inappropriate behavior toward female staff had continued. An investigation was conducted to determine plaintiff's conduct and to evaluate the best placement for plaintiff. Plaintiff noted in a request to staff that an investigation had been conducted and he had been interviewed. The results of the investigation indicated that plaintiff had exhibited a pattern of inappropriate behavior toward female staff.

    On February 3, 2006, a "Custody Assessment Scale" was completed to determine the best security placement for plaintiff.

7

Because of the severity of his crime (First Degree Murder) his disciplinary conviction, the severity of his disciplinary conviction, and his inappropriate behavior, it was determined that plaintiff's placement in maximum custody was warranted. Based on plaintiff's behavior and his need for maximum security measures, he was placed on transit detention status on February 6, 2006, and the transfer of plaintiff to Oklahoma State Penitentiary's segregated housing was initiated. As Warden Franklin explained to plaintiff in a response to plaintiff's request to staff, plaintiff was being held in A-unit on transit detention status pending his transfer to a higher security facility such as OSP. He was being transferred because his presence was not in OSR's best interests. He was not placed in A-unit in retaliation. As Warden Franklin explained to plaintiff on February 7, 2006, he was on transit detention status until the prison received instruction from the population office he could be transferred to OSP.

## I. Plaintiff has failed to establish an Eighth Amendment Violation.

Plaintiff alleges defendants violated his right to freedom from cruel and unusual punishment based on his placement in segregated housing and his conditions of confinement. Plaintiff has failed to establish any constitutional violation.

In order to hold prison officials liable for violating an inmate's right to humane conditions of confinement, the deprivation alleged must be "sufficiently serious." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). It must deprive the inmate of "the minimal civilized measure of life's necessities." In

addition, the official must have a "sufficiently culpable state of mind," amounting to a "deliberate indifference" to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prison official is only liable if he "knows of and disregards an excessive risk to inmate health and safety." Farmer at 837.

Plaintiff has failed to establish an Eighth Amendment violation. He has failed to demonstrate that he was subjected to conditions which deprived him of "the minimal civilized measures of life's necessities." The facts establish the living conditions at the OSR's segregated housing are safe and humane, and they approximate those of the general population. Plaintiff had access to the same necessities, services, and privileges as inmates in general population.

Further, plaintiff has not met his burden of proving that defendants had a "sufficiently culpable state of mind," amounting to a "deliberate indifference" to a substantial risk of serious harm to an inmate. Farmer at 834. In the case at bar, the facts establish that plaintiff was not placed in administrative segregation as the result of deliberate indifference, but instead was placed in that area because of the potential danger to staff that his behavior had reflected, as well as the threat to the orderly operation of the facility. Both times plaintiff was placed in segregation, evidence had indicated that he had exhibited inappropriate behavior to female staff. Since plaintiff has failed to demonstrate that his placement in administrative segregation subjected him to conditions depriving him of "the minimal civilized measure of life's necessities" or that defendants exhibited a "culpable state of mind." The court finds plaintiff's Eighth Amendment claim is without merit.

9

## II. Plaintiff has failed to state a Due Process Claim.

Plaintiff also argues his placement in administrative segregation violated his Fourteenth Amendment due process rights. The Due Process Clause guarantees due process only where a person is deprived of life, liberty, or property. Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994). Where prisoners are concerned, constitutionally protected interests are generally limited to freedom from restraint "which imposes a typical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Placement in segregation even for punitive reasons does not implicate an inmate's right to due process. Sandin at 486-87.

There are no state laws or prison regulations creating either a right or an expectation for a prisoner to remain in a particular prison or classification to which he has been assigned, and no due process hearing is required in conjunction with a transfer to a different facility. Such transfers are within the discretion of the corrections officials. Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215 (1976); and Twyman v. Crisp, 584 F.2d 352, 355-356 (10th Cir. 1978). Therefore, plaintiff's assignment to administrative segregation did not implicate his due process rights. The facts are undisputed plaintiff was housed in administrative segregation because of his inappropriate and disruptive behavior that presented a significant security risk. The Department of Correction's Administrative Segregation policy OP-040204-1 provides that a prisoner may be placed in administrative segregation when he presents such a security risk. In addition, the conditions of the OSR's segregated housing are safe and

10

humane and approximate those of the general population. As a result, plaintiff had no due process right to remain in a certain area of a prison, particularly following his inappropriate behavior.  Accordingly, his due process claim must be dismissed.

III.  Plaintiff has failed to establish a claim for retaliation.

Plaintiff alleges defendants retaliated against him by leaving him in what he thought was disciplinary segregation.  He alleges the purported retaliation was the result of his filing a complaint against the staff.  A plaintiff alleging retaliation for his exercise of constitutional rights "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." Smith v. Maschner, 899 F.2d 940, 949-50 (10th Cir. 1990) (quoting McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)).  "[I]t is imperative that plaintiff's pleading be factual and not conclusory.  Mere conclusory allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990).  In the case at bar plaintiff was not placed in disciplinary segregation but was placed in administrative segregation in accordance with the Department of Corrections' Segregation Measures policy.  He was initially placed in administrative segregation on pending investigation status following Officer Dietrich's receipt of a note from plaintiff in which plaintiff made several inappropriate and menacing sexual statements.  Following an investigation into the matter and a disciplinary charge of Menacing, a hearing was held in which it was determined that plaintiff had communicated the sexually suggestive statements and was guilty of Menancing.

11

Based on these grounds, sufficient evidence supported the conclusion that he had exhibited inappropriate and potentially threatening behavior toward staff.  Therefore, his October 2005 placement in administrative segregation was warranted.  Plaintiff has simply failed to establish that it was retaliatory in nature.  Following the finding plaintiff was guilty of misconduct, his status in administrative segregation was changed from pending investigation to Level 2 administrative segregation, prior to the time he was integrated back into general population.  This also was not retaliatory in nature and was warranted because of his potential risk to staff.

Plaintiff's February 2006 administrative segregation placement also was warranted and was not retaliatory.  An investigation was being conducted regarding plaintiff's behavior toward staff. The investigation uncovered numerous occasions when plaintiff had exhibited inappropriate and risky behavior toward female staff.   Furthermore, a custody assessment of plaintiff's security needs indicated he should be placed in maximum security.  Therefore, plaintiff's placement on administrative segregation status on that occasion also was warranted and did not constitute retaliation claims.

### IV.  Plaintiff failed to demonstrate that defendants Ward, Sirmons, and Davison personally participated in any events which led to plaintiff's claims.

Personal participation is an essential element of a 42 U.S.C. Sec. 1983 claim.  <u>Bennett v. Passic</u>, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  Plaintiff includes former Department of Corrections Director Ron Ward, Oklahoma State Penitentiary Warden Marty Sirmons, and Oklahoma State Penitentiary Unit Manager Layne

12

Davison as defendants, but fails to allege that they even participated in any events relating to the two remaining claims in this action. Plaintiff has failed to establish that these officials were involved in the plaintiff's cell placement. Further, there is no respondeat superior liability in a civil rights case. <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1441 (10th Cir. 1996). Accordingly, defendants Ward, Sirmons and Davison are hereby granted summary judgment for plaintiff's failure to establish their personal participation in his alleged civil rights violations.

Accordingly, the defendants Sirmons, Davison, Ward, Franklin, and McCollum's Motion For Summary Judgment and Brief in Support is hereby **GRANTED**.

**IT IS SO ORDERED** this 26th day of February, 2008.

*Frank H. Seay*
Frank H. Seay
United States District Judge
Eastern District of Oklahoma